Good morning, Your Honors, and may it please the Court, my name is Anthony Chester, and I represent the appellant, David Coyne, in this matter. Briefly as an initial procedural matter, the appellant notes that this appeal is now limited to one appellee, Messerli & Kramer, and the one letter that it sent, which can be found on Appendix 44. There's two main arguments today for this matter. First, that appellant plausibly stated a claim under 1692E, E2A, E10, and 1692F in F1 of the FDCPA for the improper attempted collection of interest upon interest. And second, that the appellant plausibly stated a material violation of the FDCPA. Briefly, as to the facts, this is a case about a debt collector attempting to collect debt that it is not entitled to. Appellee sent Coyne a debt collection letter in February 2016, alleging that Coyne owed over $13,000 plus 6% interest of over $3,800. Appellee later revealed that the 6% was being charged at the statutorily authorized rate. This is Minnesota Statute 334.01. Coyne brought a complaint contending that the appellee improperly compounded interest upon interest by charging 6% simple statutory interest upon a charge off balance that already included an interest. Appellee has brought a motion to dismiss. The district court judge entered an opinion that did not address the interest upon interest argument, which is currently on appeal, but dismissed all of Coyne's claims nonetheless, finding that Coyne had not alleged a material violation of the FDCPA. Now, as to the first argument, Coyne has plausibly stated a claim under 1692E and 1692F in their subsections. Of course, on a motion to dismiss, as understood through Twombly and Iqbal, a plaintiff need only assert or show that the claim is plausible on its face, not certain, not probable, simply plausible. Courts have held the violations, or at least alleged violations, of the FDCPA to an objective test and look at it through the lens of the unsophisticated consumer, that is, a person of below average intelligence or sophistication. So your claim depends on the assertion that it was statutory interest, correct? Yes, Your Honor. And in the allegations, how is that plausibly alleged, as opposed to being the contractual interest that was assigned? As alleged in the complaint, the claim of interest on the letter, which of course is found on Appendix 44, appellee asserts that 6% interest is due on the amount claimed against Coyne. 6% interest is what the Minnesota statute provides, 334.01. Appellees, if they attempt to claim, for example, that contractual interest applies, it's at odds with the very interpretation or very understanding of the plain text of 331.01. Particularly, as 331.01 points out, and I'll quote, the interest upon any legal indebtedness shall be a rate of $6 upon $100 for a year, unless a different rate is contracted for in writing. So is this an unknown here, what exactly was assigned when, it was Citibank, correct, when they sold this debt, what was assigned to Midland? Do we know? Is that alleged in the complaint? Is it attached in any way? What is attached to the complaint is the debt collection letter that was sent. As to what was sold or otherwise transferred to Midland Funding, the party that then acquired the debt, as a result of the sale after charge-off, that is an unknown. We do not know. So we don't know the exact terms of the assignment or the sale to Midland? Because it seems to me if we've got that and if we know what the contractual or assignment terms are, wouldn't that answer the question, contractual or statutory? Perhaps, Your Honor. Depending, of course, on whether or not any contractual interest was waived. For example, by virtue of . . . I don't know what, I'm sorry. Depending on whether or not, it may, for example, to more fully clarify, it may provide the understanding. Wouldn't it? Wouldn't it? I would think that the appropriate, the relevant contractual rate would be in the original  Isn't that right? Correct, Your Honor. Not in the assignment. It may be noted in the assignment, but yes, it would be noted in the original contract. That's what's relevant. Correct, Your Honor. It's not . . . and so, we don't know. I mean, there was this piece of paper that your opponent put into evidence that purported to show that there was a 25% plus interest rate, but it was just kind of a . . . there was no connection made to you or your client. That's correct, Your Honor. So, but if that were the rate, would that be the end of your case? If this court were to determine that either one, the terms could even be considered in determining whether or not a contractual interest rate applied, ultimately, this comes down to a question of fact. What happened? I understand that. My question is a legal one. Assuming it was 25%, would that be the end of your case? If contractual interest was applied, then yes. Yeah. Okay. At any rate, I guess. Yes. That's another question I have, is it doesn't . . . your case is that they were charging interest on interest. Yes, Your Honor. That's your case. It's very simple. So, it doesn't matter whether it was six, or it doesn't matter that it was the statutory rate, does it? It just matters that they were charging interest. It does matter that it was the statutory rate, specifically because Minnesota Statute 334.01 is a simple interest statute, specifically contractual interest . . . But the rate . . . The rate? It doesn't matter what the rate is in the statute. Correct. Yeah. So, that's out of the case. It's just . . . your case is that they were charging interest on interest. Correct. Period. 2%, 19%, 0.1%. Statute, no statute. It doesn't matter. And they can't do that, you say, unless the contract says they can. Correct. Okay. Well, that's the case, right? Effectively, yes, Your Honor. And the issue being, you can't charge simple interest on interest. In effect, it amplifies the overall amount claimed, more so than what is . . . What's the state of the record on whether the original amount included interest? The charge-off balance, at least as it's alleged in the complaint . . . Alleged, but . . . okay. And does that get you past the motion? Is that what you're saying? Yes, Your Honor. This is a motion to dismiss. You have to be prepared to prove that, but not now is what you're saying. Effectively, yes, Your Honor. We need to go through . . . Is that plausible? I apologize. I'm sorry. Is it plausible? Yes, Your Honor. It's plausible specifically because, on the plain face of the letter, 6% interest was charged. No, no. I'm talking about the interest. Okay. You're saying . . . I'm talking about the first interest. You're claiming the charge-off balance included interest. Yes, Your Honor. Okay. Now, there's nothing in the record to show that, and your answer may be that it doesn't have to be at this stage. Is that correct? Yes, Your Honor. Okay. Yes. And it's commonly understood . . . What makes that plausible? Charge-off balances always include interest, fees, costs. So, at least it's not implausible? Certainly not, Your Honor. Okay. Maybe that's all you have to show. Yes, Your Honor. More than plausible in this case at all, any charge-off balance is always inclusive of these additional costs, fees, and interest. Well, that might be. I don't know. But, at this point, I guess we don't need to know. Yes. So, again, is it your argument that the creditor could demand only 25.24% interest or 6% and nothing else? Yes, Your Honor. And this is plainly understood in Minnesota Statute 334 . . . Even though it might otherwise be beneficial to the debtor, that's irrelevant? In looking at the statute, it provides that . . . Go ahead. It provides that contracts shall bear the same rate of interest after they become due as before. A party cannot just arbitrarily reassign the percentage rate. Effectively, it's 6% or it's contractual interest. It's one or the other. Even though it might be beneficial to the debtor. Regardless of the application of the interest, ultimately, and certainly what a Pelley may try to claim, which is blending a statutory versus contractual approach, that's not provided in the Minnesota Statute. And certainly, we don't have a contract to provide that that is allowed otherwise as well. Now, particularly to the claim of plausibility or rather material violations of the FDCPA, two issues or two cases are particularly on point here. This is the Demarius v. Gristel-Chargo case and then, of course, the very recent case in Hill v. Accounts Receivable, which Judge Wollman, I believe, you authored. For Demarius, assuming that . . . the court stated that assuming materiality is required to attempt to collect a debt not owed, rather, an attempt to collect a debt not owed is a material violation of 1692F1. In Hill v. Accounts Receivable Services, which I'm sure Pelley will speak to more specifically, but effectively, it's a claim or it's a case where the court adopted a materiality analysis to 1692E alone as to claims of false representations relating to authenticity of documents submitted in the underlying state court action. Three cases really matter for this case today. Stuffy v. Landberg, Haney v. Portfolio Recovery Associates, which again, Judge Wollman, I believe you were on the panel for, and Demarius v. Gristel-Chargo. Haney is particularly instructive as what happened in Haney is exactly what we're seeing here. A debt collector, debt collector law firm, sending a letter, sending correspondence that contained a reference or request for interest at the statutorily authorized rate. That statute, in Missouri in that case, was a simple interest statute and it applied to a charge-off balance. That charge-off balance contained interest as it was alleged. That compounded interest improperly and otherwise inflated the overall amount. This case is on all fours with the Haney decision. Therefore, the court should likely adopt the same approach there, or here rather. And again, remind us where Judge Magnuson specifically went wrong with respect to the argument you're making today. Judge Magnuson didn't address the interest upon interest argument. Judge Magnuson didn't address the interest upon interest argument. It wasn't specifically addressed in the opinion as noted in the request for reconsideration in the order on the request for reconsideration, which states while this decision was not specifically contemplated in the order, it is dismissed nonetheless because it is not, or rather the court found that allegations are not material under the FDCPA as alleged in the complaint. Now- There was something in the record about a comment that everybody knows that credit cards charge exorbitant interest rates. That may be the case, particularly for a charge-off balance, but what we're looking at now is a balance that was acquired by a debt collector- I'm not defending it. I'm just trying to determine if my recollection is correct. Yes, Your Honor. That was stated. It did talk about it a little. Isn't that right? Generally, I suppose you could say general musings on the fact that credit cards contain interest. Yeah. However, no reference to- No evidence. Yeah. No reference to a contract. No reference to specific terms and conditions, nothing. Your specific claim for relief is that we should do what in terms of- Reverse the district court's opinion as to the interest upon interest argument, specifically that the appellant has plausibly stated a claim that the appellee improperly inflated interest by applying interest upon interest to an amount that's larger. There's nothing further that the district court should be asked to do about the case? Otherwise, there was one issue that was dismissed without prejudice, but that's not on appeal currently. I see. Thank you. Lastly, before I wrap up and allow Pelley up here, I'd simply note that it's important to take in kind when looking at the materiality analysis that it is an objective standard and not a subjective standard. It's dangerous to apply a subjectivity approach to the materiality analysis and of course at odds with what this court has provided in its decisions in Duffy, in Peters v. General Service Bureau, in any other cases that have been analyzed materiality. Thank you all. I'll save the rest of my time for rebuttal. Mr. Weber. Thank you, Your Honor. May it please the Court, Derek Weber appearing on behalf of Appellee Messerly and Kramer. Messerly and Kramer is a law firm, and its lawyers do their best to zealously advocate for their clients. Like all lawyers, we're subject to the rules of professional conduct and rules of the court, but unlike most lawyers, we're also governed by the state's attorney generals and the Consumer Financial Protection Bureau and the Fair Debt Collection Practices Act. And that's what finds us here today. I mentioned the CFPB because the letter at issue today is a letter that was sent at the direction of the CFPB. They wanted us to send letters out to all of our consumers that say, you know, here's information about your debt, and here's how to obtain more information about your debt. But you note, as Judge Magnuson noted in his order, that it was not a collection letter. It was not a letter requesting a payment. It just simply requested Mr. Coyne to ask more questions if he had them. The two letters sent by Messerly's client actually demanding payment are no longer at issue here. Messerly had nothing to do with Midland's letters. We're just simply looking at one disclosure letter. The single issue remaining is whether that information letter sent by Messerly and Kramer describing interest accruing violated the FDCPA by seeking an amount either not authorized by the agreement or not authorized or permitted by law. And specifically, Mr. Coyne is alleging that Messerly violated 1692E, which is one section of the FDCPA, by falsely misrepresenting the character and amount of the debt. That's one piece of it. And then the second piece of it is 1692F, probably more specifically, to collect interest not authorized by the agreement or permitted by law. Now recently this court analyzed in Hill a very, very similar fact pattern. In Hill, the creditor pursued a claim with interest in court and lost. Hill then sued his creditor and alleged that the creditor violated 1692E and F. So very, very similar fact pattern to what you have here today. The court adopted the materiality standard and noted that requesting statutory interest is not a violation of the FDCPA. That was a right that the creditor had to do, and the court noted the Hoganson case that has not yet been determined by the state whether or not statutory interest could apply. The court concluded that Hill was not misled by the documents submitted to the court, and although Hill had a valid defense to the interest claim, it was not a violation for the creditor simply to request it. Now, unlike the Hill case, in our case here today, there has not been a determination that Midland's claim was invalid. And in fact, to the contrary, Mr. Coyne does not dispute having his Citibank credit card for nearly 40 years, paying interest all that time without contestation. In fact, paying a much higher percent interest all throughout that time. Thus the application of the Hill reasoning is even more applicable in this case. Now, Midland submitted the terms governing the account establishing that the interest rate is 25.24%, not the 6% disclosed in the letter. This issue of requesting less interest than it permitted by contract has been addressed many times. What's the showing that that was really part of the contract? I'm sorry, say it again, Your Honor. What's the showing that that was really part of the contract? It's just a piece of paper that was evidently relevant to some accounts, but what was the connection between that piece of paper and this account? Absolutely, Your Honor. That's a great question. And the way that credit cards work, and they're governed by Regulation Z, the Banks and Banking Act, is that when credit cards are issued, the terms and conditions governing that account are sent to the consumer, and that consumer has the right to review those. What is the connection between these conditions and this card? So the connections are that the terms and conditions specifically lay out, these are the Citibank terms and conditions governing the Citibank's account. Are we supposed to believe that they have only one set of terms and conditions? They have only one set of terms and conditions governing a big body of accounts, yes. How do we know that? Well, we submitted the terms and conditions to the Court, and said these are the terms and conditions that governed this account, and that was not objected to. I believe it was. I believe it said that it was not authenticated. No, he did not. He just said we never signed them. So which terms . . . I believe that's not correct, Counsel, but in any event, what he was saying was, this between me and this . . . Correct, based upon the fact that he says, I didn't sign these. And the Court dispensed . . . We have a difference over the records. Sure. But the Court dispensed with that, saying, no, when you use your account, that's what invokes the terms and conditions. And you're certainly at liberty with any credit card not to use it, and to say you don't. So, I mean, that's . . . there's a whole body of case law regarding terms and conditions and how they are applicable and how they're relevant. It's not part of the appeal, because it wasn't raised as a part of the appeal, and we don't believe it was raised. We disagree. But we don't necessarily believe it was raised in the motion to dismiss, but it certainly, Your Honor, was not raised on the appeal, whether or not the terms and conditions should have been brought into the case. What is the . . . it seems like a strange question, but it's troubling. What is the heart of Mr. Cohen's argument before this Court? The violation of the Minnesota statute prohibiting interest on interest? I believe that's the heart of his claim, is that he's made the presumption that because we charged the rate consistent with the statutory rate, that therefore, that we were charging statutory interest, and statutory interest has a little bit of baggage with it that says you can only charge simple interest. So I think that's the heart of his argument. And your argument is you're not talking about statutory interest at all? Is that your response? So, number one, we're not talking about statutory at all, and number two, we believe we did charge simple interest on the charged-off balance. And so those are both arguments that we've made. And of course, was that argument addressed by the District Court? Was it made in the District Court? Yes, it was, Your Honor. And the District Court's response was? The District Court essentially ruled that the charge-off balance was not at dispute, and therefore, argued that the interest was not violative in general's terms. In other words, did not violate the statutory prohibition of interest on interest? Correct. Okay. So it does matter whether the statutory interest was . . . it's not just merely . . . compounded interest, in other words, is not contrary to this federal statute. It's a necessary part of this case that the Minnesota statute was violated. Absolutely, Your Honor. So you're saying it was just a coincidence that it turned out to be 6 percent? No, it's not a coincidence.          It's a fact. It's a fact. It's a fact. It's a fact. It's a fact. It's a fact. So why wouldn't we charge 25 percent? You know, if you're looking at a creditor and saying, you know, this is a very large interest, right, 25 percent, that's a big hit. Why don't we do the right thing and lower it down to what the legislature has said is a more reasonable rate? And so creditors frequently do this, instead of charging 25 percent for five years, six years is how long it had been since he had paid, let's use a lower percent of interest. It's a consumer-friendly approach, Your Honor. Well, I think if you could prove that up, then you're in pretty good shape. We're here on a motion. Yeah, I agree. You know, we're in a procedural posture where proof is sort of out of the case at the moment. Absolutely. But I think the point is really that they've concluded and alleged and said that the only plausible way for this to be anything is statutory because they used six percent. And there's plenty of other reasons why, including the actual reason why, which is to have a consumer-friendly approach and to try to charge less interest. I know, Your Honor, I will. I promise to be truthful. Well, I can't say it any better than the cases that have talked about this concept about lowering the interest rate. I mean, the principal case on that would be what? That's the Cy Vong A versus Medca case. And then there's a plethora of cases cited in our memorandum that talk about it. And it really, the court states that there's nothing unfair or deceptive about lowering the interest rate. And in fact, if a creditor chooses to compromise the debt in this fashion, even the least sophisticated consumer would presumably count her blessings, not, as the debtor does here, complain. An attempt to trot out the old bromide about no good deed? No good deed does, it goes unpunished, and we're being punished here. And we're not even the creditor, we're just the lawyers. We're just trying to, you know, follow what the CFPB wanted. We're trying to follow what the client wanted and trying to do our best to represent our clients. What about the assertion that the original amount, more or less naturally, would include interest? So, and we dealt with this a little bit in our brief. It wasn't one that was a really main argument, but I wanted to highlight that because I think it is a good point. The way that credit cards work is that, and again, governed by Regulation Z, is you get a billing statement. And it might include charges, it might include late fees, it might include interest, it might include all kinds of things. And you have a month to look at that and dispute anything. And then after that, all of those charges go back and go into principal. And you get a new credit card billing statement, and it's now got the new principal, and everything is what's called capitalized. And so when you see a charge-off balance, it is capitalized. Everything in there is principal at that point. It has gone through the statutory process and become capitalized into principal. So when we took the charge-off balance and said, let's just use that balance and charge 6% interest, we weren't charging interest on interest. We were- It was capitalization of it, though, essentially incorporates the interest. Well, certainly. I mean, any charges- No, it is interest on interest. Well, it's- It's just an accounting trick. It's an accounting wizardry, yes, Your Honor. But by statute, though, it is principal. And so I understand that a payment is made. You don't know where that payment got applied over 40 years. You don't know what's left in that charge-off balance. It could be interest. It could be- There's no way to even recreate that. Well, is it plausible that there's interest in there? And that's the position we're in, right? Yes and no. So, I mean, our position is that through the process that's there, everything has been capitalized into principal. And yes, at one point it was interest during that billing cycle, but it is now, at charge-off, it's capitalized. So that's where we're at. But we talked a little bit about the fact that Haney is a little misplaced because of that issue. And that Haney really dealt with facts before it that said there is interest in that charge-off balance. They didn't address this issue of capitalization, nor did they look at the contract interest. It was just a simple case that dealt with statutory interest. And so that's why we think the reliance on Haney is misplaced. We're trying to go at this at the contract rate, which makes Haney out of the picture. And we're also talking about capitalization of the- I have an abstract question. Mm-hm. How does one determine, what does it mean to say that this was really statutory interest, as opposed to really being just a number you picked that was, in fact, the same number in the statute? How do you decide? How does that, is that a fact question, or? I don't think it's a fact question. I don't know that it really matters. Because I think that at the end of the day, whether we charged 6%, or we charged 10%, or 4% interest, I think we're charging contractual interest. We're not charging statutory. So, and statutory- You may be able to prove that it really is. Sir, but Your Honor, you can charge statutory interest at 4% if you want. It says up to. It doesn't mandate that you have to be 6%. So, I think it's irrelevant that nowhere in any communication with Mr. Coyne has there been any assertion that there was statutory interest alleged. We made an argument in a court pleading about it, and council has said that that's why they're claiming statutory interest, and that's not exactly true. There's no communication with Mr. Coyne that says we're charging statutory interest. So, finally, the disclosure of this interest had no impact on Mr. Coyne, he simply did not respond, did not request more information. It's clear that under the Hill analysis and that he had no, it was not material to his decision making at all. The cases in Demarius and Duffy are both cases a little bit off point, because they deal with cases where they pursued debts that absolutely were barred and not permissible. And so, this is not our case here. Your Honors, we respectfully request that you affirm Judge Magnuson's order. And if you have no further questions, I thank you for your time. Very well, thank you for your argument. Oh, excuse me, do you have a question? May I have one question? Of course. No, I'm sorry, I'm in for the rebuttal. Oh, for the rebuttal, of course. Well, we'll give him a couple. I'll say, why should an otherwise simple case, why do I find it so difficult to come to the heart of what we're talking about here today? So, we'll give you a couple of minutes to clear up my thinking, and I think Judge Arnold has a question. Okay, beyond the additional time, sure. Yes, well, I didn't realize you had 2 minutes and 56 seconds. Yeah, we'll get along with it, two minutes and 56 seconds. I just added that. Pardon? I just added that, Your Honor. You just added it, okay, very well. So, you have two minutes and 56 seconds to try to clarify in my mind at least what we're talking about. Yes, Your Honor. Effectively, we're talking about using simple interest to amplify an overall amount, or rather simple interest statute to amplify an overall amount by compounding interest. You can't use a simple interest statute to compound interest. It's against the very foundation, the very purpose of that simple interest statute. Effectively, a debt collector is then collecting or getting more money, more interest than what it really can under a simple interest approach by compounding interest. That's the issue. That's the main issue here. I would know this is statutory interest. It was charged at 6%. It was, this is identical. That's enough. It's identical to the statutory approach. I was off base when I said the statute is really out of the case. It's not. I mean, that's the heart of it. Yes, Your Honor. Okay, so, I'm sorry about that. I thought you agreed with me that it didn't matter what the rate was, that it was just interest on interest that was the violation. It matters for the purpose of identifying what kind of interest this is. It's being charged at 6%. The statute provides that interest must be charged at 6% unless a different amount is contracted for. One other question. Did you object to the, what was your reaction to this piece of paper that purported to contain the terms and conditions of your contract? Yes, Your Honor. You correctly identified that there was an objection to the terms and conditions, specifically that they were unauthenticated. And specifically, those words were actually used in the actual memorandum itself. Additionally, the Midland, or Midland, contrary to what the appellee is claiming here, Midland did not submit the terms and conditions. Meserly and Kramer did through their attorneys separately. Totally unconnected to the party that actually owns the debt. Totally unconnected to Citibank. Totally unconnected to anyone or Coyne himself, showing that somehow this is the underlying contract. Thank you. Additionally, on that very same point. Was there an objection that you didn't sign it? There was also the discussion about the fact that there was no signature on it. It couldn't be considered an agreement creating the debt. Particularly because it was dated after Mr. Coyne had allegedly defaulted on the debt. It was created after, or at least during the period in which shortly thereafter it was charged off. In other words, these terms and conditions that were tacked on to the appellee's memorandum are totally unconnected, as well as actually dated after any of the alleged debt or charges were incurred on the debt. It is simply, according to the plain text of 1692F, not expressly authorized by an agreement creating the debt. This is not an agreement creating the debt. Does it matter that this was not, if it is true, according to your opponent, that it was not a demand for payment? No, Your Honor. The issue with that in particular is, and I see that my time is up, if I may briefly- You may answer. Complete your answer. The issue there is the letter itself on Appendix 44 states at the very bottom, this is an attempt to collect a debt from a debt collector. It specifically identifies that it is an attempt to collect a debt. So it would matter, but in this case, that's not what it was, is what you're saying. Perhaps, however, it's irrelevant for this case. Specifically, including in the first paragraph within that letter, it does state that this is an attempt to collect a debt. It's wholly inaccurate to claim that it is not a collection letter. Thank you. And at the risk of confirming that, which everyone has already found to be quite clear about my lack of understanding, suppose the interest rate had been 5%? 5% of, at least, according to the statute, it appears that there's a either, and I can quote the statute if you'd like. Right on. Interest on any legal indebtedness shall be at a rate of 6% or excuse me, $6 upon 100. That's statutory simple. Or, or unless, so this is in the disjunctive, unless a different rate is contracted for in writing. It's 6% or it's a contracted rate. So the collectors then have no safe harbor, in other words, to protect themselves against a claim of this nature? If you're charging statutory interest on a, or simple interest, it effectively, you must only apply it to principal. You can't compound interest upon interest. Well, thank you for your argument. It's an interesting case, and we will take it under consideration. Thank you very much, your honors.